Argued January 14; reversed February 11; rehearing denied
March 4, 1941

# FIRST NATIONAL BANK OF PORTLAND et al.
## v. AYOUTT
(110 P. (2d) 243)

Before KELLY, Chief Justice, and RAND, ROSSMAN
and BAILEY, Associate Justices.

*George L. Belt*, of Salem (Carson & Carson, of Salem, on the brief), for appellant.

*John B. Ebinger*, of Klamath Falls (Theodore R. Conn, of Lakeview, on the brief), for respondents.

KELLY, C. J. On or about July 25, 1935, one Dave Vadnais ordered of the firm, doing business under the name of Mammoth Garage at Lakeview, Oregon, one International Motor truck for which he agreed to pay the total sum of $1,982.

When said order was given, C. D. Arthur and Paul M. Drenkel comprised the firm doing business at Lake-

view under the name of Mammoth Garage. This action was instituted on November 30, 1937. Mr. Arthur died on or about August 19, 1938, and the First National Bank of Portland was appointed as executor of the last will and testament of said C. D. Arthur, deceased, and administrator of the estate of C. D. Arthur and Paul M. Drenkel, doing business under the assumed name of Mammoth Garage. On November 15, 1938, said First National Bank of Portland, as such administrator was substituted for Messrs. Arthur and Drenkel as plaintiff herein.

The truck so ordered was furnished by the International Harvester Company of America having branch offices and a place of business in Portland, Oregon. The firm known as Mammoth Garage were the agents, at Lakeview, of said International Harvester Company, for the sale of International trucks.

A note for $1,370.35 payable in nine installments of $137 each and a final installment of $137.35, and a chattel mortgage upon said International truck were executed by said Vadnais and Paul M. Drenkel to Mammoth Garage as security for part of the purchase price of said truck. This note and the mortgage securing it were assigned to the International Harvester Company. Vadnais agreed to pay Mammoth Garage the remainder of the purchase price of said truck, namely, $611.65 within thirty days. On August 16, 1935, Vadnais executed his promissory note to Mammoth Garage, in the body of which the principal sum of the note is designated as Six Hundred and 65/100 Dollars, while on the upper left-hand corner of the note, where the principal sum is indicated in figures, it appears as $611.65. This note was executed at the instance of an agent of the Mammoth Garage and was made payable thirty days after the date thereof.

On the 28th day of June, 1935, Mammoth Garage delivered to said Vadnais a Beall single axle logging trailer, serial No. 107, for which Vadnais agreed to pay $750.

The Mammoth Garage also secured for Vadnais a certain lumber roll and paid the freight upon it from Lakeview to Coquille or Marshfield.

At the time of the foregoing transaction, Vadnais paid Mammoth Garage approxmiately $189, which was credited upon the account for freight and for said lumber roll.

Vadnais made some payments upon the chattel mortgage, but was in default most of the time.

Defendant, Ayoutt, worked part of the time for Vadnais operating the truck and trailer in suit.

On June 11, 1936, Vadnais wrote the following letter:

"Coquille Ore
June 11-36

Dear Paul;

I havent been working steady & it been raining lately & it will be a while before my job will start & its such a long haul that a single axle trailer would not be any good on it. So I wish you would turn it over to Joe Ayoutt for he has a real good job for a single axle trailer I haven't any money to make my payments & you said you would not wait any longer & I don't blame you, but it has been tough here this spring so much rain. Joe has a good job & will make good money & he is working for a good reliable man the man name is Mr. McCarthy I have turned over all my rights if I have any to Joe & you so it will be up to you. I hope you will give Joe a chance for I know he can make it.

Yours truly

DaveVadnais"

The Paul to whom the foregoing letter is addressed is Mr. Paul Drenkel, one of the firm doing business under the name of Mammoth Garage.

It appears that when the truck was delivered to Vadnais at Bandon defendant Ayoutt was present. The down payment was mentioned at that time and so was the payment due the International Harvester Company.

Mr. Ayoutt, the defendant herein, took the above quoted letter from Vadnais to Drenkel to Lakeview and presented it to Mr. Drenkel. Mr. Ayoutt then told Mr. Drenkel that he would make the $137 payments to the International Harvester Company and also give Mr. Drenkel $100 within one month as part payment on the trailer.

In answer to a request by his counsel to relate the whole conversation, Mr. Drenkel said:

"Joe Ayoutt told me he had a good job; he could pay it out better than Dave could if he took it over according to Dave's letter. That is what he wanted to do, take it over; he could pay for the thing and Dave could not."

We quote further from Mr. Drenkel's testimony:

"The Court: Anything else?

A. That is practically all. He was in a hurry to get home.

The Court: Well you said something about his wanting something to show he had a right to take it.

A. I wrote him out a little note and told him the Harvester Company—that this contract would have to be changed with them. Then we found out from the Harvester Company that they would not accept Joe Ayoutt, but they told him he could go on and make Dave Vadnais' payments and leave it as it was."

Over defendant's objection, Mr. Drenkel then testified that defendant Ayoutt at that time promised to pay the down payment on the truck.

Before plaintiff's case in chief was concluded, it was conceded that plaintiff had repossessed the trailer in suit and that the amount due to the International Harvester Company upon the chattel mortgage executed by Mr. Drenkel and Mr. Vadnais had been fully paid by Vadnais and defendant.

The determinative question, therefore, is whether defendant Ayoutt is chargeable with the indebtedness originally incurred by Vadnais and termed the down payment in this record. It will be recalled that Mr. Vadnais did not make payment of any part of this indebtedness which amounted to $611.65; but, approximately a month after he had received the truck, he executed a promissory note therefor.

A careful perusal of the record fails to disclose any memorandum in writing signed by defendant expressing the consideration and agreeing to assume this obligation of Vadnais.

■ Neither does the record disclose a novation. It nowhere appears that Mammoth Garage agreed to release Vadnais from liability for the item known here as the down payment, and accept defendant as its debtor in place of Vadnais. Vadnais secured his release by taking the benefit of bankruptcy, about two months before this action was instituted.

The remaining question is whether an agreement was made between Vadnais and defendant for the benefit of plaintiff to the effect that defendant would pay plaintiff the amount of said down payment. The only agreement to which Mr. Drenkel testified was that defendant wanted to take it over "according to Dave's letter". "He could pay for the thing and Dave could not." That letter made no reference to the truck or to the item termed "down payment", or the promissory note given by Vadnais.

Plaintiff stresses the fact that on the 18th day of January, 1937, defendant telegraphed from Myrtle Point to Mr. Drenkel at Lakeview as follows:

"Six days ago I wrote you relative to the amount due on my truck and trailer as the letter was no doubt mislaid I wish to call your attention that aforesaid amount is of utmost importance I would appreciate it greatly if you would give the matter your prompt attention"; and that when defendant received the following telegram in answer thereto, namely:

"Letter never received. Balance due Truck trailer down payment freight and rolls. Eleven Hundred Fourty Eight Dollars. Seventeen cents."—

Defendant wrote:

"received your telegram O. K. but shore was surprised that there was as much money again my out fit. As you know that truck has run now for two years without any real overhaul so I wanted to get it ready for work as soon as this strike is seattled my intensions was to get the truck refinanced so as to get enough money to over haul it, but now the way it looks that I will have to try to earn enough with it, to get that work done, as it shore needs an over haul but anaway I ought to make good this year as prospects for work look good as soon as work does open up"

In this letter acknowledging Mr. Drenkel's telegram, there is no promise to pay Ayoutt's obligation evidenced by his promissory note.

The original arrangement suggested by Mr. Vadnais' letter to Mr. Drenkel was confined to the deal concerning the trailer. No other contract was suggested by Mr. Vadnais. The item of $611.65 had no reference to the trailer and when defendant took possession of the truck that item was not a charge of any kind against the truck.

Attention is also called by plaintiff to the following notation in defendant's bankruptcy schedule of personal property, verified on September 8, 1937, to wit:

"G. Carriages and other vehicles, viz: Equity in 1935 model C40 International truck Beall logging trailer sold to David Vadnais originally whose equity has been assigned to me in June 1936 and on which a balance is owed to P. Drinkell, Lake View, Oregon of $1050.00 which is more than prant sale value    00.00"

■ This notation discloses an inconsistency on defendant's part with respect to the value of the truck and trailer in that in the matter of the estate of C. D. Arthur, deceased, defendant presented a claim containing the following statement:

"That on or about November 30, 1937, claimant was the owner and in possession of a certain International Motor Truck, Motor H. A. 35811;

That on said date the said C. D. Arthur, deceased, and Paul M. Drenkle, doing business under the assumed name of Mammoth Garage, wrongfully, maliciously and with intent to injure claimant, converted the said truck to their use. That said truck on said date was of the reasonable value of $1500.00."

This inconsistency bears upon the credibility of defendant's testimony, but it does not show that defendant was, or is, chargeable with the amount represented by the down payment which Mr. Vadnais agreed to pay.

■ We can come to no other conclusion than that defendant did not obligate himself to pay any part of the charge referred to herein as the down payment. No other claim than that is now made by plaintiff against defendant and hence this results in a reversal of the decree of the circuit court and the rendition of a decree in favor of defendant as prayed for in his answer herein.

Decree of the circuit court reversed.